**UNITED FARM BUREAU MUTUAL INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Don G. LOWE and Judith K. Lowe,**
Appellees–Plaintiffs.

No. 14A01–9107–CV–217.

Court of Appeals of Indiana,
First District.

Dec. 23, 1991.

James W. Riley, Jr., Thomas R. Haley III, Riley Bennett & Egloff, Indianapolis, Rabb Emison, Emison Doolittle Kolb & Roellgen, Vincennes, for appellant-defendant.

Russell E. Mahoney, Mahoney Law Office, Petersburg, for appellees-plaintiffs.

ROBERTSON, Judge.

United Farm Bureau Mutual Insurance Company (Farm Bureau) appeals from the grant of summary judgment in favor of Don G. and Judith K. Lowe (the Lowes) in their suit for declaratory judgment. The Lowes sought a declaration that amended Ind.Code 27–7–5–2 applied to increase their insurance coverage. Farm Bureau raises one issue on appeal:

> Whether the trial court erred as a matter of law in concluding that the 1987 amendments to I.C. 27–7–5–2, enacted in P.L. 391–1987(ss) and applicable "only to policies first issued after December 31, 1987," apply to the 1988 renewals of the Lowes' policies, which were first issued in 1975 and 1983?

We reverse.

The Lowes owned two automobile insurance policies issued by Farm Bureau. One policy was originally issued in 1975, the other was originally issued in 1983. Each policy has been renewed since, with the first one most recently renewed in February of 1988 and the second one most recently renewed in March of 1988. The Lowes were involved in an automobile acci-dent in April of 1988, and they claim the 1987 amendment to I.C. 27–7–5–2 operated on their 1988 renewals, as a matter of law, to increase their coverage.

In 1982, the legislature repealed the then current uninsured motorist statute, I.C. 27–7–5–1, which required insurers to offer uninsured motorist coverage for bodily injury in an amount equal to the State's minimum financial responsibility requirements. P.L. 166–1982, Sec. 6. In the same act, the legislature amended I.C. 27–7–5, by adding a new section 2, which reads:

> (a) Each automobile liability or motor vehicle liability *policy of insurance* which is *delivered or issued for delivery* in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law the bodily injury or death suffered by any person and for injury to or use of a motor vehicle, *must provide coverage*, either in the policy or in a supplement to it:
>
> (1) in limits for bodily injury or death and for injury to or destruction of property set forth in IC 9–2–1–15 under policy provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death and for injury to or destruction of property resulting therefrom; or
>
> (2) in limits for bodily injury or death set forth in IC 9–2–1–15 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom.

The uninsured motorist coverage may be *offered* by insurers in limits higher than those set forth in IC 9–2–1–15, but may not be greater than the limits of liability

specified in the bodily injury and property damage liability provisions of an insured's policy.

(b) The named insured of an automobile or motor vehicle liability policy has the right to reject, in writing, either or both of the uninsured motorist coverages described in subsection (a) of this section unless the insured also has uninsured motorist bodily injury liability insurance coverage under this section. Following rejection of either or both uninsured motorists coverages, unless later requested in writing, the insurer need not provide uninsured motorist coverage in or supplemental to a renewal policy in connection with a policy previously issued to the same insured. Renewals of policies issued or delivered in this state which have undergone interim policy endorsements or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages in this section.

P.L. 166–1982, Sec. 1 (emphasis supplied). Essentially, the statute required that insurers provide uninsured motorist bodily injury coverage in an amount equal to the state's minimum financial responsibility requirements under I.C. 9–2–1–15. These requirements eventually reached $25,000 per person and $50,000 per occurrence, where they now stand. According to the statute, the insurer could offer such coverage up to the limits of liability for bodily injury and property damage in the provisions of the insured's own policy, but the insurer was not required to do so. The insured could reject such uninsured motorist coverage in writing.

In 1987, the legislature amended I.C. 27–7–5–2, as follows:

(a) ~~Each~~ **The insurer shall make available in each** automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law the bodily injury or death suffered by any person and for injury to or use of a motor vehicle, ~~must provide coverage, either in the policy~~ or in a supplement to **such a policy, the following types of coverage:**

(1) in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9–2–1–15[1] under policy provisions approved by the commissioner of insurance, for the protection of persons insured ~~thereunder~~ **under the policy** who are legally entitled to recover damages from owners or operators of uninsured **or underinsured** motor vehicles because of bodily injury, sickness or disease, including death and for **the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for** injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death **not less than those** set forth in IC 9–2–1–15[2] under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured **or underinsured** motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom.

The uninsured **and underinsured** motorist ~~coverage~~ **coverages** ~~may~~ **must** be ~~offered~~ **provided** by insurers ~~in limits higher than~~ **for either a single**[3] **or for separate premiums, in limits equal to** [~~those set forth in IC 9–2–1–15, but may not be~~

---

1. A subsequent amendment strikes this cite and inserts IC 9–25–2–4 to reflect the change in the financial responsibility statute. P.L. 2–1991, Sec. 88.

2. *Id.*

3. A subsequent amendment inserts the word premium at this point in the text. P.L. 5–1988, Sec. 145.

~~greater than~~][4] the limits of liability specified in the bodily injury ~~and property damage~~ liability provisions of an insured's policy, **unless such coverages have been rejected in writing by the insured. Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.**

(b) The named insured of an automobile or motor vehicle liability policy has the right ~~to reject~~, in writing, ~~either or both~~ to

**(1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or**

**(2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.**

~~of the uninsured motorist coverages described in subsection (a) of this section but no~~ No insured may have uninsured motorist property damage liability insurance coverage under this section unless the insured also has uninsured motorist bodily injury liability insurance coverage under this section. Following rejection of either or both uninsured ~~motorists coverages~~, **motorist coverage or underinsured motorist coverage,** unless later requested in writing, the insurer need not ~~provide~~ **offer** uninsured **motorist coverage or underinsured** motorist coverage in or supplemental to a renewal policy in connection with a policy previously issued to the same insured. Renewals of policies issued or delivered in this state which have undergone interim policy endorsements or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages in this section. P.L. 391–1987(ss), Sec. 1. Essentially, the amended statute requires that insurers provide underinsured coverage, in addition to the uninsured coverage, in amounts equal to the insured's own bodily injury limits in the insured's policy, unless the insured has rejected the coverages in writing.

The Lowes' policies included uninsured motorist coverage at the amount given at the time in the financial responsibility statute, $25,000 per person and $50,000 per occurrence. The Lowes had, however, bodily injury limits in their policy of $50,000 per person and $100,000 per occurrence. Effective January 1, 1988, Farm Bureau provided all policyholders with uninsured motorist coverage, including the Lowes, with underinsured motorist coverage equal to the insured's uninsured motorist coverage at no extra charge. Then, in February and March of 1988, the Lowes' policies were renewed. The Lowes claim the amendment operated to increase their underinsured coverage to the greater bodily injury amounts when their policies were renewed just before their automobile accident.

As noted, Indiana Code Section 27–7–5–2 was amended by P.L. 391–1987(ss). Section 5 of the Act states that the Act takes effect January 1, 1988. Section 4 of the Act states that I.C. 27–7–5–2, as amended by the act, applies only to policies *first issued* after December 31, 1987 (our emphasis). Farm Bureau claims the amendment applies only to policies originally or newly issued after December 31, 1987, and not to the renewal of policies in existence. Thus, Farm Bureau contends the 1988 renewals of the Lowes' policies remain at the financial responsibility limits.

▪ The statute in question is clear and unambiguous. We need therefore not construe it, but merely apply it to this case. The 1987 amendment not only amended I.C. 27–7–5–2, but also I.C. 27–7–5–4 and I.C. 27–7–5–5. The amendment stated the Act takes effect January 1, 1988. P.L. 391–1987(ss), Sec. 5. However, with respect to I.C. 27–7–5–2, the statute in question here,

---

4. The phrase, "those set forth in IC 9-2-1-15, but may be greater than" does not appear in the 1987 amendment in the form enacted by the general assembly and signed by the governor although it is included in the 1982 version of the statute and was not struck by the amendment.

the legislature included a special section so that the amended statute applies only to policies first issued after December 31, 1987. P.L. 391–1987(ss), Sec. 4. We do not consider these two sections contradictory.

The legislature obviously did not intend the statute to apply to all policies issued after December 31, 1987 but only to those first, or originally, issued after that date. The Lowes policies were not first issued after December 31, 1987; they were first issued in 1975 and 1983 and were then renewed after December 31, 1987. The notice from Farm Bureau to its policyholders clearly stated that current policies, which included uninsured motorist coverage, would be revised and amended, effective January 1, 1988, to provide both uninsured and underinsured motorist coverage. Such an amendment or revision of the current policy does not constitute an original or new policy within the meaning of I.C. 27–7–5–2. The statute, as amended, does not apply to the Lowes' policies; the statute before the amendment would appear to apply. Therefore, Farm Bureau was not required to offer the Lowes uninsured or underinsured motorist coverage at the Lowes' bodily injury limits.

On appeal, the Lowes challenge this interpretation of I.C. 27–7–5–2, with a claim that such an application of the statute violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States and the Equal Privileges Clause of Article 1, Section 23, of the Indiana Constitution. Specifically, the Lowes contend that to apply the statute in this manner would establish arbitrary and unreasonable classifications of policyholders: those who held the policy before January 1, 1988 and those who did not. They also contend that such classifications do not bear a substantial or rational relation to the object of the legislation.

■ Farm Bureau maintains, however, that the Lowes have waived the Equal Protection and Equal Privileges claims because those issues were not addressed to the trial court. Farm Bureau is correct. Generally, a party may not raise an issue on appeal that was not raised in the trial court.

*Fortmeyer v. Summit Bank* (1991), Ind. App., 565 N.E.2d 1118, 1120. This rule also applies to summary judgment proceedings. *Id.*

The crucial factor, however, in determining whether the Lowes may inject what appears to be a new issue into the appeal is whether Farm Bureau had unequivocal notice of the existence of the issue and, therefore, had an opportunity to defend against it. *See id.* at 1121. The record reveals the Lowes' position before the trial court at the summary judgment hearing included a claim that Farm Bureau's interpretation of the statute would establish unfair classifications of policyholders and that policyholders should be treated alike regardless of whether the policy were originally issued or merely renewed after January 1, 1988.

■ Farm Bureau is correct that the Lowes did not raise the Equal Protection and Equal Privileges claims before the trial court and therefore may not raise them on appeal. However, the Lowes in fact substantially raised the arbitrary and unreasonable classification issue before the trial court; and, as the issue does not change the result in this case, we will alternatively address it as an Equal Protection/Equal Privileges claim. We also note our supreme court has established that the rights intended to be protected by Art. 1, Sec. 23, of the Indiana Constitution and the Equal Protection clause of the Fourteenth Amendment of the Constitution of the United states are identical. *Reilly v. Robertson* (1977), 266 Ind. 29, 360 N.E.2d 171, *cert. denied,* 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83.

■ The Lowes claim the statute divides policyholders into two groups: those in existence on December 31, 1987, who, when they purchase a renewal policy, will *not* "get the protections and benefits afforded by the 1987 amendment" and those who first purchase a policy after December 31, 1987, who *will* "get the protections and benefits of the 1987 amendment." The Lowes claim that, even if the 1982 version of the statute applies to their policies, the following unreasonable results obtain: insurers would not have to offer them any

underinsured motorist coverage, insurers would not have to offer them any uninsured and underinsured motorist coverage equal to the their own bodily injury limits, and insurers would not even have to inform them of the "right to purchase such coverage equal to their own liability limits." The same is true of policyholders similarly situated with the Lowes. Therefore, the Lowes reason that the 1987 amendment should apply in this situation, as it would not produce these unreasonable results.

We note, however, that policyholders who were insured before December 31, 1987, and who renew thereafter, are not deprived of the opportunity to have their uninsured and underinsured coverage at their own bodily injury limits. They must merely submit a request to their insurer that the coverage be raised. The effect of the statute is that the insurer must offer the coverage at bodily injury limits to new insureds and that, with renewal insureds, the coverage continues at financial responsibility limits, as it had in the past, with the opportunity for the insured to increase the coverage to bodily injury limits if desired. The 1982 version of the statute does not prohibit underinsured motorist coverage or uninsured and underinsured motorist coverage equal to the insured's own bodily injury limits.

The Lowes claim that the statute produces arbitrary and unreasonable results when applied in this manner. They reason that if the 1987 amendment does not apply to renewals, then either no uninsured and underinsured statutes apply to them or they continue to be governed by the 1982 version of I.C. 27–7–5–2. This appeal does not require that we decide this issue. The Lowes demanded from Farm Bureau that it pay for losses, which exceeded the policy limits of another party to the automobile accident, under the *underinsured* motorist provision of their policy. We will therefore limit our decision to the statute as it applies to underinsured, not uninsured, coverage.

The 1982 version of the statute did not mention underinsured coverage but also did not prohibit it. The parties were free to contract for such underinsured motorist coverage if they so desired, but Farm Bureau was not required to provide it in any amount. It did so, however, effective January 1, 1988, at the financial responsibility level.

The Lowes claim that another unreasonable result produced by such classifications is that policyholders in existence on December 31, 1987, are absolutely forbidden to purchase uninsured motorist coverage greater than their own bodily injury liability limits. As noted, the Lowes did not make a demand for payment under their uninsured motorist coverage provision. We therefore need not consider this claim, as it does not impact upon this appeal.

The Lowes also claim that this application of the 1982 version of the statute will not allow policyholders in their position to obtain underinsured motorist coverage "greater than the limits of liability specified in the bodily injury and property damage liability provisions" of their policy. As noted, however, the 1982 version does not address itself to underinsured motorist coverage. The quoted provision applies to uninsured motorist coverage, and does not prevent underinsured motorist coverage in an amount greater than an insured's bodily injury liability limits.

The statute, as amended, does not divide policyholders in the Lowes' position into an unreasonable, arbitrary class apart from policyholders first issued policies after December 31, 1987. All Indiana citizens may obtain underinsured motorist coverage at their bodily injury liability limits. For policies first issued before January 1, 1988, however, the insured must request that coverage. Under these facts, we do not conclude the statute violates the Equal Protection or the Equal Privileges Clauses.

The Lowes finally claim this interpretation of the statute contravenes public policy, which favors a presumption that the insured's uninsured and underinsured motorist coverage be of the same magnitude as the insured's own bodily injury liability coverage. *Meridian Mutual Ins. Co. v. Richie* (1989), Ind., 540 N.E.2d 27, vacated on other grounds, 544 N.E.2d 488. In *Ri-*

*chie*, however, the court did not address section 4 of P.L. 391–1987(ss). If it had, we believe the court would have limited the application of that presumption to those policies originally issued after December 31, 1987, just as we have done here.

The trial court erred as a matter of law when it granted the Lowes partial summary judgment and thereby declared they had uninsured and underinsured motorist coverage at their bodily injury amounts due to the application of amended I.C. 27–7–5–2 to their 1988 renewals. Judgment is therefore reversed with instructions to enter partial summary judgment in favor of Farm Bureau and thereby declare the uninsured and underinsured motorist coverages remain as they did before the 1987 amendment in the amounts of $25,000 per person and $50,000 per occurrence.

Judgment reversed with instructions.

RATLIFF, C.J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. First, assuming that the policies were "renewed," the statute in question contains language indicating that it applies to these "renewed" policies. Indeed, only certain types of renewed policies are excluded from coverage, as follows:

> Renewals of policies issued or delivered in this state *which have undergone interim policy endorsement or amendment* do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages described in this section.

Ind.Code § 27–7–5–2(b). Certainly, if the legislative intent was to exclude *all* renewed policies, there would be no need for such qualifying language in the statute.

Of course, our foremost objective in reviewing the statute is to determine and implement legislative intent. *Spaulding v. International Bakers Services, Inc.* (1990), Ind., 550 N.E.2d 307, 309. Every word and phrase should be given effect and meaning, and no part should be held meaningless if it

can be reconciled with the rest of the statute. *Id.* "We examine the statute as a whole, giving words common and ordinary meaning 'and not overemphasizing a strict literal or selective reading of individual words.'" *Id.* The plain language of the statute is the best evidence of its meaning. *Avco Financial Services v. Metro Holding Co.* (1990), Ind.App., 563 N.E.2d 1323, 1325, *reh. denied.*

Here, the plain language indicates that legislative intent was to exclude only certain renewed policies. While the statute also provides "[it] applies only to policies first issued after December 31, 1987," we should not overemphasize a strict literal reading of the word "first." *Spaulding,* 550 N.E.2d at 309. We must harmonize the phrase containing the word "first" with the other phrase stating that only certain renewals do not constitute "newly issued or delivered policies for which the insurer is required to provide the coverages described in this section."

Second, the record indicates that the policies were first issued *after* the statute was amended in 1988. Indeed, the policy attached to the Complaint has a declarations page, which states: "Issue Date 03–24–88." In addition, it states that "it replaces and supersedes" any preceding policy. There is a distinction between a policy which has been extended or renewed, and one which has been replaced or superseded. The latter means an entirely new policy has been issued to the insured for the first time; it is "first issued." In this case, the policy in question was not continued or renewed; it was a new policy "first issued" in 1988.

This case should be affirmed. We should uphold the legislature's intent "that an insured's coverage protecting him from other drivers be of the same magnitude as his own bodily injury liability coverage." *Meridian Mutual Insurance Co. v. Richie* (1989), Ind., 540 N.E.2d 27, 31, *vacated on other grounds,* 544 N.E.2d 488. For the foregoing reasons, I dissent.