**Michael P. MILLIKAN,
Appellant–Plaintiff,**

v.

**UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Appellee–Defendant.**

No. 57A03–9212–CV–409.

Court of Appeals of Indiana,
Third District.

Aug. 31, 1993.

Rehearing Denied Oct. 29, 1993.

HOFFMAN, Judge.

Appellant-plaintiff Michael P. Millikan appeals the trial court's entry of summary judgment in favor of appellee-defendant United States Fidelity and Guaranty Company ("USF & G") in a complaint asking the court to declare coverage for underinsured motorists' recoveries to separate insurance policies.

On January 6, 1989, Gregory Fryzel, a member of the Franciscan Friars (Friars),[1] and Millikan were westbound on State Road 26 in Howard County, Indiana in a vehicle operated by Fryzel, when the vehicle was struck by a pickup truck operated by Mark A. Jones. The vehicle which Fryzel was driving was owned by the Friars. Millikan sustained personal injuries in the collision. Following the collision, the insurance companies for Jones offered Millikan $150,000.00, the maximum amount under Jones' automobile liability policies, in settlement.

USF & G had issued to the Friars, and there were in force and effect, two policies of insurance covering the vehicle driven by Fryzel. The first was a commercial auto liability policy, which had a limit of recovery for bodily injury in the amount of $500,000.00 for each person and $1,000,-000.00 for each accident. The second was a commercial umbrella liability policy with a policy limit of $2,000,000.00. The policies of insurance were issued to the Friars through Thomas E. Wood, Inc., an insurance broker with offices located in Cincinnati, Ohio. Neither of the policies of insurance included uninsured or underinsured motorist coverage. Although the Friars were aware of the nature and availability of the coverages, the Friars had rejected the coverages each year that they were offered.

Millikan made a demand upon USF & G, the insurer of Fryzel and the Friars, for underinsured motorist coverage contending that his injuries were substantial and continuing, and that Jones' settlement was not adequate enough to cover his losses. The demand was refused by USF & G which

John S. Knight, Parrish & Knight, Fort Wayne, for appellant-plaintiff.

Thomas C. Ewing, Carolyn M. Trier, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellee-defendant.

1. The Franciscan Friars is a religious organization headquartered in Cincinnati, Ohio, and operating and conducting its affairs throughout the United States including Indiana.

countered that no such coverage was enforceable under the Friars' policies and that it was not required to provide the coverage under applicable Indiana law. Subsequently, Millikan filed his complaint against USF & G asking the court to declare coverage for underinsured motorist coverage. USF & G filed its motion for summary judgment alleging that IND. CODE § 27–7–5–2 did not require underinsured motorist coverage in the Friars' policies because: 1) the policies were not "delivered or issued for delivery in Indiana," and 2) the policies of insurance were identified as renewal of policies and not "first issued" policies. On September 1, 1992, the trial court granted USF & G's motion for summary judgment. This appeal ensued.

■ The sole issue presented for review is whether the trial court erred in granting USF & G's motion for summary judgment. The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Chambers v. American Trans Air, Inc.* (1991), Ind.App., 577 N.E.2d 612, 614, *trans. denied.* Our standard of review is the same as that used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. Ind.Trial Rule 56(C).

■ Millikan contends that the trial court erred as a matter of law in concluding that the policies of insurance were not "delivered" or "issued for delivery" in Indiana and that USF & G was not required to provide the Friars with underinsured motorist coverage pursuant to IND. CODE § 27–7–5–2. USF & G counters that the Friars' policies of insurance were renewal policies, first issued prior to 1985, and, therefore, they were not required to provide the Friars with underinsured motorist coverage.

Even if this Court was to assume the insurance policies issued by USF & G were constructively delivered to the Friars in Indiana, the trial court correctly granted summary judgment to USF & G. In pertinent part, IND.CODE § 27–7–5–2 provides that uninsured and underinsured motorist coverages must be provided by insurers in limits equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, "unless such coverages have been rejected in writing by the insured." Section 4 of P.L. 391–1987(ss) states that the act as amended applies to policies "first issued" after December 31, 1987. Prior to the 1987 amendment to IND.CODE § 27–7–5–2, underinsured motorist coverage was not required, and the statute only required insurers to provide uninsured motorist bodily injury coverage in an amount equal to the state's minimum financial requirements under IND.CODE § 9–2–1–15. *See* P.L. 391–1987(ss); *United Farm Bureau Mutual Insurance Co. v. Lowe* (1991), Ind.App., 583 N.E.2d 164, 166–167.

■ Recently, in *Lowe*, 583 N.E.2d 164, this Court concluded that the statutory requirement of IND.CODE § 27–7–5–2 that insurers offer underinsured motorist coverage, in addition to uninsured coverage, in amounts equal to the insured's own bodily injury on all policies issued after December 31, 1987, applied only to new policies of insurance and did not apply to renewals of existing policies. *Id.* at 167–168. A renewal policy is a replacement policy issued at the end of a policy period and not the first issuance of a policy. *Inman v. Farm Bureau Ins.* (1992), Ind.App., 584 N.E.2d 567, 569. As defined in IND.CODE § 27–7–6–3:

" '[r]enewal' or 'to renew' means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer insuring the same insured, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term[.] ..."

*Id.*

In the present case, while the insurance policies in dispute were both issued on Sep-

tember 21, 1988, they were renewal policies of policies "first issued" prior to 1985 and, therefore, not covered by the terms of the 1987 amendments to IND.CODE § 27-7-5-2. Thus, USF & G was not required to offer the Friars underinsured motorist coverage.

The policies on their face state that they are "renewal" policies. Further, the affidavit of USF & G's insurance broker, Thomas J. Klinedinst, Sr., states that the Friars' Automobile Liability insurance policy numbered 1AB11173291800, with policy periods of September 21, 1988 through September 21, 1989, was a renewal of prior policies which dated back to some time prior to 1985. Likewise, Klinedinst stated that the Commercial Umbrella Liability insurance policy numbered ULC11173444700 was a renewal policy of prior Comprehensive Excess (umbrella) policies. The initial or first issued policy of insurance which precedes the Commercial Umbrella Liability policy also was issued prior to 1985. The evidence designated by USF & G shows that both policies of insurance (1) replaced, at the end of a policy period, (2) a policy previously issued and delivered by the same insurer, USF & G, to (3) the same insured, the Friars, *see* IND.CODE § 27-7-6-3, thus, meeting the definition of renewal policies of insurance first issued prior to December 31, 1987. Millikan has failed to designate any evidence which would dispute this fact.

Millikan points to statements in both Klinedinst and Father Kenan P. Freson's affidavits to the effect that USF & G had made available to the Friars underinsured motorist's coverage, which it rejected. Millikan contends that, since there is no evidence of a written rejection, any oral rejection of such coverage was ineffective. Millikan's contention misses the mark. The issue is not whether there had been a valid rejection of the coverage; rather, the issue is whether USF & G was required to offer the insurance; it was not. *Cf. Lowe*, 583 N.E.2d at 169 (Although the 1982 version of the statute did not mention underinsured motorist coverage, it also did not prohibit it and parties were free to contract for such coverage if they so desired.). In the present case, USF & G was not required to provide underinsured motorist coverage to the Friars' automobiles. The judgment of the trial court is affirmed.

Affirmed.

CONOVER, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

In affirming the trial court's grant of summary judgment in favor of the insurer the majority relies upon *United Farm Bureau Mut. Ins. Co. v. Lowe* (1991) Ind.App., 583 N.E.2d 164 (Chezem, J., dissenting) which was followed by the same district in *Inman v. Farm Bur. Ins.* (1992) Ind.App., 584 N.E.2d 567. I believe that the majority in *Lowe* was sufficiently wrong to require my dissent to the majority herein and to any further application of *Lowe*.

In 1987 our legislature determined that automobile insurers should make available uninsured/underinsured motorist protection to their clients in amounts equal to the insured's own bodily injury limits, rather than the minimum coverage limits that had previously applied. It therefore amended IC 27-7-5-2, 4 & 5 to accomplish that goal effective January 1, 1988.

While rules for statutory construction abound and often apparently justify reaching different results, there is consensus that our primary goal is to determine and implement the intent of the legislature. *See, e.g., Superior Const. Co. v. Carr* (1990) Ind., 564 N.E.2d 281. There are normally two problems, however, in doing that. In states like Indiana that preserve no legislative debate and comment we must often speculate as to why particular provisions may have been enacted. Secondly, as Judge Cardozo pointed out, oftentimes there is no precise legislative intent because the legislature simply did not contemplate the conflict that has arisen. *Cardozo, The Nature of the Judicial Process,* pp. 14-15.

Despite these impediments it seems to me very clear that our legislature in enact-

ing these 1987 amendments intended that commencing January 1, 1988, insurers were to offer uninsured/underinsured motorists coverage to their policy holders in the liability amounts that the policy holders had elected for their own coverages for bodily injury and property damage. Indeed the motivation was sufficiently strong that the legislature chose a scheme which mandated providing coverage at those limits *unless* the insured expressly rejected such coverage in writing.

With this backdrop it seems to me wholly incongruous for the *Lowe* court to have interpreted the amendments as drawing a distinction between policies issued to new customers for the first time and to which the amendments would apply, and theretofore issued policies as they came up for renewal, to which the amendments would have no application. The court accomplished this by noting the legislature had provided that the amendment would apply to "policies first issued after December 31, 1987."

Upon the stated premise that the statute was clear and unambiguous and that the legislature therefore "obviously" did not intend the statute to apply to all policies issued after December 31, 1987, the court reached its conclusion.

I would suggest that what the legislature meant by its "first issued" language is not at all clear and unambiguous. It could, and I believe should, be interpreted as having meant that while the amendment would not be applied while the policy was in term and the premium had already been determined and likely paid, it was to apply as soon as those policies came up for renewal in 1988. It further appears to me that the latter interpretation would much more clearly accord with the apparent legislative intent in adopting these amendments, and I would so hold.

In addition, while the policies in question here were negotiated, written and delivered in Ohio to the Friars headquarters, it is clear that the vehicle in question was registered and regularly maintained in Indiana for operation in Indiana. Under these circumstances I would find as the court did in

*Krstich v. United Services Auto. Assoc.* (1991 N.D.Ohio) 776 F.Supp. 1225 that the policies were nevertheless issued for delivery in Indiana within the meaning of the application statute, IC 27–7–5–2.

I would reverse the summary judgment and therefore I dissent.