AMERICAN STATES INSURANCE COMPANY, Appellant, Defendant–Counterclaimant Below,

v.

Eugene T. BRADEN & Janice L. Braden, et al., Appellees–Plaintiffs.

No. 25A03–9303–CV–80.

Court of Appeals of Indiana, Third District.

Dec. 16, 1993.

---

R. Kent Rowe, Edmond W. Foley, Rowe, Foley & Associates, South Bend, for appellant.

David T. Stutsman, Stutsman & Mulvaney, Elkhart, Robert E. Peterson, Rochester, for appellees Eugene T. Braden and Janice L. Braden.

HOFFMAN, Judge.

Appellant-defendant American States Insurance Company (American States) appeals the trial court's entry of summary judgment in favor of appellees-plaintiffs Eugene T. Braden and Janice L. Braden in a complaint asking the court to declare American States responsible for underinsured motorist coverage for losses sustained in an automobile accident.

The facts pertinent to this appeal disclose that on May 4, 1990, Eugene Braden was injured in an automobile accident when the van he was driving was struck from behind by a car driven by Jason McGuire. The van had been manufactured by Chrysler Corporation which pursuant to a consignment agreement sent the vehicle to Elk Enterprises, Inc. ("Elk"), located in Elkhart, Indiana, so that a conversion package could be added to the van. At the time of the accident, the van was being delivered to Anderson–Dodge, Inc. of Rockford, Illinois.

Braden began driving for Elk in April of 1988. Braden was not an employee of Elk but was hired on a per job basis specifically for the purpose of delivering vans. When a driver was given a van to deliver, the driver was provided with a dealer license plate. Drivers who delivered vans for Elk on a regular basis, like Braden, had a permanent dealer plate assigned to them which they used on any vehicle they were assigned to deliver. The registration for

the dealer plate was taped to the back of the plate and showed American States as the insurance company for Elk. Braden was also required to carry with him a signed form stating that he was an independent driver for the delivery of Elk van conversion products, that the vehicle and the license plate were to be used only for the purpose of delivering vehicles to Elk's dealers, and that during the course of the delivery he was covered by Elk's insurance policy.

On the date of the accident, Elk was insured through American States under a commercial insurance policy providing Elk with automobile liability coverage and an uninsured/underinsured motorist endorsement providing one million (1,000,000) dollars in coverage. In part, the premium charged for uninsured/underinsured motorist coverage was rated on a per dealer plate basis.

On June 12, 1991, the Bradens brought this action against McGuire to recover for personal injuries suffered as a result of the accident. The Bradens subsequently amended their complaint to include American States, Elk's insurer, and General Accident Insurance Company, which insured the Bradens' personal vehicle, contending that McGuire was underinsured. American States denied that it was liable for any underinsured motorist benefits to the Bradens and filed a counterclaim and a cross-claim against General Accident and Elk. Thereafter, American States filed its motion for summary judgment seeking a declaratory judgment that the policy of insurance provided no underinsured motorist coverage for the Bradens. The Bradens then filed a response and a cross motion for summary judgment declaring American States provide underinsured motorist coverage to them. The trial court denied American States' motion and granted the Bradens' motion for summary judgment determining that American States was responsible for underinsured motorist coverage through its policy holder Elk for losses sustained by the Bradens. American States now appeals.

The sole issue presented for review is whether the trial court erred in granting summary judgment in favor of the Bradens, holding that underinsured motorist coverage was available to the Bradens under the policy of insurance issued by American States to Elk. The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Chambers v. American Trans Air, Inc.* (1991), Ind.App., 577 N.E.2d 612, 614, *trans. denied.* Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. This Court's standard of review is the same as that used by the trial court: whether there is a genuine issue of fact and whether the moving party is entitled to judgment as a matter of law. *State Bd. of Tax Com'rs v. New Energy Co.* (1992), Ind.App., 585 N.E.2d 38, 39, *trans. denied.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. Ind. Trial Rule 56(C).

The provisions of an insurance policy are subject to the same rules of interpretation and construction as are other contract terms. Summary judgment based upon construction of a contract is a determination, as a matter of law, that the contract is not so ambiguous that resort must be made to conflicting extrinsic evidence to ascertain the contract's meaning. *Peterson v. Universal Fire and Cas. Ins.* (1991), Ind.App., 572 N.E.2d 1309, 1311. An ambiguity will be found only if reasonable persons upon reading the contract would differ as to the meaning of the terms; an ambiguity is not established simply because one party asserts an interpretation contrary to that asserted by the opposing party. *Meridian Mut. Ins. Co. v. Cox* (1989), Ind.App., 541 N.E.2d 959, 961, *trans. denied.* If there is an ambiguity, the policy should be interpreted most favorably to the insured; whereas, clear and unambiguous language in a policy should be given its plain and ordinary meaning.

*Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665, 668.

American States argues that the trial court erred in granting the Bradens' motion for summary judgment. More specifically, it contends that the Bradens are not entitled to underinsured motorist benefits under the policy of insurance issued by American States to Elk because as an independent contract driver Eugene Braden was neither an "insured" as defined in the policy nor was he driving a "covered" vehicle.

On May 4, 1990, the date of the accident, American States had issued to Elk a commercial automobile insurance policy which included a garage liability form providing one million (1,000,000) dollars of liability coverage and an endorsement providing one million (1,000,000) uninsured/underinsured motorist coverage. Section II of the Garage Coverage Form, which provides for liability coverage, states in part:

"**A. COVERAGE**

We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations....'

**1. WHO IS AN INSURED**

a. The following are 'insureds' for covered 'autos:'

(1) You for any covered 'auto.'

(2) Anyone else while using with your permission a covered 'auto' you own, hire or borrow...."

Section VI of the Garage Coverage Form defines "garage operations" to include "... the ownership, maintenance or use of the 'autos' indicated in SECTION I of this Coverage Form as covered 'autos.' 'Garage operations' also include all operations necessary or incidental to a garage business."

The insurance provided under the Garage Coverage Form is modified by an endorsement, effective February 1, 1990, entitled "INDIANA UNINSURED AND UNDERINSURED MOTORIST COVERAGE." The endorsement provides:

"**A. COVERAGE**

1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle' or an 'underinsured motor vehicle'....

**B. WHO IS AN INSURED**

1. You.

2. If you are an individual, any 'family member.'

3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.' "

The term "You" refers to the named insured under the policy, "Elk Enterprises Inc." Both under the liability coverage and uninsured/underinsured endorsement the definition of "insured" is further expanded to include partners, employees, directors, and stockholders of Elk while acting within the scope of their duties. Braden concedes that he was an independent contractor and not a named insured at the time of the accident. Thus, it is undisputed that Braden was not an "insured" under paragraph one of either the portion of the Garage Coverage Form, providing for liability coverage or the endorsement thereto providing uninsured/underinsured motorist coverage, nor does Braden claim to be a family member of the named insured, Elk.

Paragraph three of the uninsured/underinsured motorist endorsement defines an "insured" as anyone else occupying a "covered auto." American States argues that a "covered auto" for purposes of uninsured/underinsured motorist coverage is defined by the insurance policy to include only those autos which Elk owns. As American States points out, item two of the declaration section of the insurance policy, which is a schedule of coverages and covered autos, identifies a "covered auto" for purposes of uninsured motorist coverage and presumably underinsured motorist cov-

erage, by a symbol 22. Symbol 22 is described as "only those 'autos' you [Elk] own." Thus, American States argues that since the van driven by Braden was a consignment pool vehicle and not owned by Elk, Braden was not an "insured" for purposes of uninsured/underinsured motorist coverage. Braden counters that the trial court correctly determined that he was occupying a "covered auto," as defined in paragraph two of the liability section of the Garage Coverage Form, hence, making him an "insured" and entitling him to underinsured motorist coverage.

 Any insurance language which dilutes statutory protections is contrary to public policy. *See Peterson*, 572 N.E.2d at 1312. The uninsured motorist statute is violated if an insurance policy limits uninsured(/underinsured) motorist protection as to persons who would otherwise qualify as insureds for liability purposes.

*Id.;*

*Whitledge v. Jordan* (1992), Ind.App., 586 N.E.2d 884, 887, *trans. denied.*

Therefore, this Court must determine whether Braden is qualified for benefits under the liability section of the insurance policy. Paragraph two of the liability section defines an "insured" as anyone using with Elk's permission an "auto" which is owned, hired or borrowed by Elk.

 Webster's Third New International Dictionary defines "borrow" as:

"to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender."

Webster's Third New International Dictionary (G & C Merriam Co. 1976). Likewise, this Court has defined the term "borrower" as one "who has, with permission of the owner, temporary possession of the property for his own purposes." *Protective Ins. Co. v. Coca–Cola Bottling Co.* (1981), Ind. App., 423 N.E.2d 656, 660, *trans. denied.* To be a "borrower," a person must have possession of the vehicle; possession connoting the right to exercise dominion and control over the vehicle. *Cf. id.* (definition of "borrower" within automobile liability policy covering borrower of vehicle during loading and unloading).

 Here, the van Braden was driving at the time of the accident was a consignment pool vehicle. Pursuant to the consignment agreement Elk entered into with the Chrysler Corporation, upon receipt of a consignment vehicle Elk accepted custody thereof. Elk was to assume responsibility for maintaining appropriate liability and physical damage insurance on vehicles delivered to Elk. The agreement further provided that Elk was to indemnify Chrysler Corporation and provide liability insurance for injuries to persons or loss or damage to property in connection with the use, operation or storage of the consignment vehicles. Elk did not relinquish its right to exercise dominion and control over a consignment vehicle until that point in time when the vehicle was delivered to a specified purchaser (dealer). Elk's purpose in obtaining the consignment vehicles was to receive compensation for equipping the vans with conversion units. Elk can be considered a "borrower" of the vehicles in its consignment pool, and, therefore, the van Braden was driving at the time of the accident fits within the definition of a "covered auto" under the liability section of the insurance policy. Thus, Braden meets the definition of an "insured," and he is entitled to uninsured/underinsured motorist coverage under the insurance policy issued by American States to Elk.

 American States contends that IND.CODE § 27-7-5-2 (1988 Ed.) does not require that the Bradens be provided underinsured motorist benefits. American States argues that since the van was not registered or principally garaged in Indiana, IND.CODE § 27-7-5-2 does not require it to make available uninsured/underinsured motorist coverage. On the date of the accident, however, a registered dealer plate issued by the State of Indiana to Elk was on the van. Also, American States correctly points out that IND.CODE § 27-7-5-2 as amended in 1987 applies only to policies of insurance first issued after December 31, 1987. *See* P.L. 391–1987 (ss). American State's policy of insurance was

issued to Elk on April 1, 1987. American States relies on *United Farm Bureau Mut. Ins. Co. v. Lowe* (1991), Ind.App., 583 N.E.2d 164, *trans. denied,* and *Inman v. Farm Bureau Ins.* (1992), Ind.App., 584 N.E.2d 567, *trans. denied,* to support its contention that it was not required to make available uninsured/underinsured motorist coverage with bodily injury limits equal to the insured's liability coverage for bodily injury.

> *See Lowe,* 583 N.E.2d at 167–168 (insurer not required to offer uninsured or underinsured motorist coverage at the insured's bodily injury limits);
> *Inman,* 584 N.E.2d at 568.

*Lowe* and *Inman,* however, are factually distinguishable from the present case. Here, the issue is not whether an insured is required to provide uninsured/underinsured motorist coverage or the amount of coverage required. Rather, the issue is whether the policy, here, which provides uninsured/underinsured motorist coverage with bodily injury limits equal to the insured's liability coverage for bodily injury, limits protection as to exclude persons who would otherwise qualify as insureds for liability purposes. Although American States was not required to offer coverage, it did, and it cannot now argue that the policy denied Braden coverage. *Cf. Lowe,* 583 N.E.2d at 169 (although the 1982 version of the statute did not mention underinsured motorist coverage, it also did not prohibit it and parties were free to contract for such coverage if they so desired). Although not required to comply with the 1987 amendments to IND.CODE § 27–7–5–2, the intent of the insurance policy issued by American States was that it comply with the provisions of the statute as amended.

■ The intent of the contracting parties, American States and Elk, to provide uninsured/underinsured motorist coverage for drivers of Elk's consignment vehicles is also evident from the policy declarations. Under item nine of the insurance policy, uninsured/underinsured motorist coverage is rated on a per dealer license plate basis. Thus, the premium charged for uninsured/underinsured motorist coverage is based in part on the number of dealer license plates issued to Elk. The dealer plates could be used on either conversion vans Elk had received on a consignment basis or on vehicles Elk owned.

On the date of the accident, a dealer plate issued by the State of Indiana to Elk was affixed to the consignment vehicle that Braden was driving. Elk had assigned a permanent dealer plate to Braden which he used on any vehicle he delivered for Elk. The registration for the plate was taped to the back of the plate indicating that Elk had insurance coverage issued by American States in compliance with the laws of the State of Indiana. By basing the premium charged for uninsured/underinsured motorist coverage on a per dealer plate basis, American States was in effect providing coverage for the consignment vehicles. American States's contention that coverage applied only when the dealer plates were affixed to a vehicle which Elk owned, is untenable.

The trial court's decision that the insurance policy issued by American States provided underinsured motorist coverage to Braden when driving the van was proper. The judgment of the trial court is affirmed.

Affirmed.

CONOVER, J., concurs.

GARRARD, J., concurs in result with opinion.

GARRARD, Judge, concurring.

I concur in the result reached by the majority. In my view, stated in dissent in *Millikan v. U.S.F. & G.* (1993) Ind.App., 619 N.E.2d 948, the 1987 amendments to IC 27–7–5–2, 4 & 5 required insurers to provide underinsured motorist coverage as required therein as and when policies came up for renewal after January 1, 1988. Thus, whether the policy before us was ambiguous is beside the point. At the time of Braden's injury in 1990, American States was required to provide him with underinsured motorist's coverage since he was

clearly an insured for purposes of delivering the van.