Gloria G. McGILL, as Personal Representative of the Estate of Hugh McGill, Jr., Appellant,

v.

John LING, Jr., Board of Trustees of Vermillion County Hospital, Orville Lynn Majors, Vermillion County, Indiana, Dr. Franklin Swaim, Dr. Hindi and Dr. Joel Elias, Appellees.

No. 49A02–0303–CV–174.

Court of Appeals of Indiana.

Jan. 15, 2004.

Rehearing Denied March 9, 2004.

Steven L. Williams, John T. Roach, Mann Law Firm, C. Joseph Anderson, John Nichols, Anderson & Nichols, Eric A. Frey, Frey Law Firm, Terre Haute, IN, Attorneys for Appellant.

Robert G. Weddle, Matthew W. Conner, Tabbert Hahn Earnest & Weddle, Indianapolis, IN, John Christopher Wall, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Gloria G. McGill ("McGill"), as Personal Representative of the Estate of Hugh McGill, Jr., appeals the trial court's entry of summary judgment in favor of Dr. John Ling, Jr., the Board of Trustees of Vermillion County Hospital ("the Hospital"), Dr. Joel Elias, Dr. John F. Swain, and Orville Lynn Majors ("Nurse Majors") (collectively "the Defendants"). McGill presents the following issues for review:

1. Whether the trial court erred as a matter of law when it determined that the Journey's Account Statute, Indiana Code Section 34–11–8–1, does not apply to McGill's proposed medical malpractice complaint.

2. Whether the class action tolling rule, as set forth in *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), applies to McGill's proposed medical malpractice complaint.

We affirm.[1]

---

1. Vermillion County and Dr. Hindi were also named as defendants in McGill's complaint, but were not part of the trial court's summary judgment order. In September 2002, the court granted Vermillion County and McGill's stipulation of dismissal and dismissed the County from the action without prejudice. But the Chronological Case Summary ("CCS") is silent as to Dr. Hindi's status until an entry dated February 7, 2003, the date the court granted the Defendants' motion for summary judgment. On that date, the court ordered McGill "to advise the court of the status of the claim against Dr. Hindi as the court['s] record is silent."

The court's February 7, 2003 summary judgment order does not, on its face, render judgment upon all claims of all the parties because Dr. Hindi was not included. Normally, "[a] summary judgment upon less than all issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing expressly determines that there is no just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties." Ind. Trial Rule 56(C). However, the effect of the summary judgment order was final as to all claims and all parties because the court determined that McGill's wrongful death claim, which named Dr. Hindi, was not timely filed. Therefore, we have jurisdiction over this appeal as a final appealable order.

## FACTS AND PROCEDURAL HISTORY

McGill's husband, Hugh McGill, Jr. ("Hugh"), died at the Hospital on December 15, 1994. Nurse Majors, who was subsequently convicted of killing six patients at the Hospital, was working there at the time of Hugh's death. In March 1995, the Indiana State Police began a criminal investigation into the epidemic rate of deaths at the Hospital. News of that criminal investigation was first reported in April 1995, and McGill became aware of the investigation from reading articles in local newspapers. In November 1996, the Indiana State Police contacted McGill, informed her of the preliminary results of the investigation, and advised her to obtain counsel because Nurse Majors might have been involved in Hugh's death.

That same month, McGill retained counsel to pursue claims for the wrongful death of her husband. Since August 1995, her counsel had been assisting with the medical malpractice aspects of claims involving approximately 138 suspicious deaths which had occurred at the Hospital between mid–1993 and April 1995. On November 27, 1996, McGill's counsel filed a Motion For Leave To File Amended Complaint in the federal class action case, *Susan Vicory, et al. v. Orville Lynn Majors, et al.*, Cause No. TH95–182–CT/H (S.D.Ind.), seeking to add McGill as a plaintiff in that action. That same date, McGill's counsel filed a Sixth Amended Complaint, adding McGill as a plaintiff, in the Vermillion Circuit Court class action, *Susan Vicory, et al. v. Orville Lynn Majors, et al.*, Cause No. 83C01–9508–CT–6. Those cases were subsequently dismissed for lack of jurisdiction after the Indiana Department of Insurance entered into an agreement with the Hospital and its insurance carrier in which the Department of Insurance agreed to assume the defense in all of the pending civil cases involving Nurse Majors and to make payment of settlements or judgments obtained against the Hospital.

Also on November 27, 1996, McGill filed her Petition and Oath in the Vermillion Circuit Court For The Appointment of Personal Representative. On December 2, 1996, Judge Bruce Stengel disqualified himself as judge, and Judge Ernest Yelton was appointed Special Judge of the probate matter on December 19, 1996. On December 27, McGill filed with the probate court Notices of Administration, which the clerk of the court executed on January 6, 1997. On February 21, 1997, McGill filed with the Indiana Department of Insurance a proposed medical malpractice complaint against the Defendants. On that same date, she joined as a plaintiff in a class action proposed medical malpractice complaint which had been filed previously with the Department of Insurance.

In August 1999, the Hospital and Dr. Ling invoked the jurisdiction of the trial court under Indiana Code Section 34–18–11–1 when they filed a Motion for Preliminary Determination of Law, To-wit Motion for Summary Judgment, along with a copy of McGill's proposed complaint. The Hospital and Dr. Ling argued that McGill's complaint was barred by the applicable statute of limitations because she had failed to file her proposed complaint within two years of the occurrence of the alleged malpractice. In October 1999, McGill responded to the summary judgment motion and argued that she had filed her proposed complaint within two years after she had discovered the alleged malpractice and that the occurrence-based statute of limitations was unconstitutional as applied to her. In November 1999, the trial court denied the Hospital and Dr. Ling's summary judgment motion.

On October 10, 2001, the Hospital and Dr. Ling filed a second motion for sum-

mary judgment, again, on the grounds that McGill's claim was barred by the statute of limitations. Nurse Majors, Dr. Swaim and Dr. Elias joined in that motion. McGill filed her response to summary judgment in November 2001, and she later filed a supplemental response and designation in September 2002.

Following a hearing, the trial court granted summary judgment in favor of the Defendants, determining in relevant part as follows:

> The undisputed facts are as follows. Hugh McGill died on December 15, 1994. On November 26, 1996, Plaintiff hired counsel to represent her in this medical malpractice claim. On November 27, 2002, believing that a personal representative was a prerequisite to filing a claim, counsel filed pleadings to obtain the appointment of Gloria McGill as personal representative of Hugh McGill's estate for the purpose of filing this medical malpractice case. Due to this misstep and a delay in obtaining a judge to approve the appointment of the personal representative, Plaintiff did not file her claim until February 21, 1997, over two months after the occurrence-based statute of limitations ran.

> Plaintiff claims that Plaintiff did not know and could not reasonably have known about the existence of the claim in sufficient time to file a Complaint and, therefore, the medical malpractice statute [of limitations] is unconstitutional as it is applied to this case. Although the

parties elaborate on the evidence relating to when Gloria McGill had knowledge of the existence of the claim or should have known of its existence, the fact which differentiates this case from the other cited cases is that legal action (albeit misdirected) was taken within the occurrence[-]based statute of limitations. This conclusively establishes that Gloria McGill did discover the existence of the claim in sufficient time to file suit. Likewise, the [Journey's Account] Statute does not save this claim since it failed due to negligence in the prosecution of the action.

This appeal ensued.

## DISCUSSION AND DECISION

Initially, we note that while the parties' arguments to the trial court focused on whether the medical malpractice two-year statute of limitations is unconstitutional as applied to McGill, McGill does not challenge the trial court's legal conclusion on that issue. Rather, she concedes on appeal that her proposed medical malpractice complaint was not timely filed within two years and has abandoned her as-applied constitutional claim. Instead, she argues that the Journey's Account Statute saves her proposed complaint and, in the alternative, that the class action tolling rule applies. We address those arguments in turn.[2]

### Standard of Review

This court set forth the applicable standard of review on appeal from a trial

---

**2.** Dr. Elias has filed a separate brief on appeal and argues that because he was not named as a defendant in McGill's federal and state class action complaints, which were timely filed November 1996, neither of McGill's arguments on appeal will save her claim against him. McGill does not address Dr. Elias' contentions in her Reply Brief. Our review of the record shows that Dr. Elias was not, in fact, named as a defendant until McGill filed her proposed complaint in Febru-

ary 1997, which was more than two years after the alleged malpractice occurred. Thus, we agree with Dr. Elias that her claim against him is barred by the applicable statute of limitations. *See* Ind.Code § 34–18–7–1(b) (stating general rule that claim may not be brought against health care provider based upon professional services or health care unless claim is filed within two years after date of alleged act, omission, or neglect).

court's summary judgment in *Mayfield v. Continental Rehab. Hosp.*, 690 N.E.2d 738, 740 (Ind.Ct.App.1998), *trans. denied:*

> The defense of a statute of limitations is peculiarly suitable as a basis for summary judgment. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. The burden is on the moving party to show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The trial court's decision on a motion for summary judgment enters the process of appellate review clothed with a presumption of validity. Nevertheless, the reviewing court faces the same issues that were before the trial court and must carefully scrutinize the trial court's determination to assure that the non-prevailing party was not improperly prevented from having his day in court. The appellate court is not limited to reviewing the trial court's reasons for granting summary judgment, [and we] will affirm a grant of summary judgment if it is sustainable on any theory or basis found in the record.

(Citations omitted).

 We further described the statutory background for medical malpractice actions in *Mayfield* as follows:

> A medical malpractice action may not be brought against a health care provider unless the claim is filed within two years after the occurrence of the alleged malpractice. Moreover, under Indiana's Medical Malpractice Act, a medical malpractice action may not be brought against a health care provider until the claimant's proposed complaint has been filed with the Department of Insurance and an opinion has been issued by a medical review panel. Therefore, the failure to file a proposed complaint with the Department of Insurance within two years [from the date the alleged malpractice occurred] is ordinarily fatal to a medical malpractice lawsuit.

*Id.* at 740–41 (citations omitted).

### Issue One: Journey's Account Statute

McGill first asserts that the trial court erred as a matter of law when it determined that the Journey's Account Statute does not apply to her proposed medical malpractice complaint which she filed with the Department of Insurance in February 1997. Before we reach the merits of McGill's argument, however, we must address whether that argument is properly before us.

When McGill responded to the Defendants' summary judgment motion in November 2001, she argued only that the two-year, occurrence-based medical malpractice statute of limitations is unconstitutional as applied. Ten months later, in September 2002, McGill filed her supplemental brief and designations, in which she argued for the first time that her claim was timely filed by application of the Journey's Account Statute. On September 27, 2002, the Hospital and Dr. Ling filed a Motion to Strike Plaintiff's Supplemental Brief and Designation, in which they argued that McGill's brief and designations were untimely. Thereafter, McGill requested that the trial court accept her supplemental brief and designation, and the Hospital and Dr. Ling then filed a substantive response to McGill's argument on the Journey's Account Statute.

On October 23, 2002, the court granted the Hospital and Dr. Ling's motion to strike. The CCS entry for that date states that, "COURT APPROVES ORDER STRIKING PLAINTIFF'S SUPPLEMENTAL BRIEF AND DESIGNATION." Contrary to McGill's contentions in her Reply Brief, Dr. Elias has provided

a signed copy of the court's October 23, 2002 Order Striking Plaintiff's Supplemental Brief and Designation in his Appellee's Appendix. According to that October 23 ruling, McGill's argument on the Journey's Account Statute and her supplemental designations had been stricken.

But at the summary judgment hearing on November 18, 2002, less than one month after the court's ruling on the motion to strike, none of the parties mentioned the court's ruling. Indeed, McGill's argument at that hearing focused not on her constitutional claim, but on her Journey's Account Statute argument, and the Defendants remained silent on the motion to strike. Instead, they responded to McGill's argument on the merits. Most importantly, despite the signed Order dated October 23, 2002, granting the motion to strike, the trial court addressed McGill's argument regarding the Journey's Account Statute in its summary judgment order.

While a "motion to strike" appears nowhere in the Indiana Trial Rules, practitioners of the law know the effect of a trial court's decision to grant such a motion: any materials stricken, whether arguments or evidence, will not be considered by either the trial court or this court on appeal. However, our review of the record as a whole shows that both the parties and the trial court proceeded on summary judgment as if McGill's argument on the Journey's Account Statute had not been stricken. And while the Defendants note the ruling on the motion to strike in their Brief on Appeal, they make no assertion that McGill's argument on the Journey's Account Statute was not properly considered by the trial court. Nor do they contend that this court should not address the claim. Thus, despite what appears to be an inconsistency between the court's October 23, 2002 ruling on the motion to strike

and its summary judgment Order, we address McGill's argument on the merits.

■ As our supreme court explained in *Vesolowski v. Repay,* 520 N.E.2d 433, 434 (Ind.1988):

At common law suits often were dismissed on technical grounds. In such cases, the plaintiff could file another writ known as a Journey's Account. The renewal suit was deemed to be a continuation of the first. The time to bring another suit was computed theoretically with reference to the time required for the plaintiff to journey to where court was held.

Although the common law remedy is no longer recognized, Indiana has created a statutory remedy in its place.

(Citations omitted). The Journey's Account Statute, Indiana Code Section 34–11–8–1, provides:

(a) This section applies if a plaintiff commences an action and the plaintiff fails in the action from any cause except:

(1) negligence in the prosecution of the action;

(2) the action abates or is defeated by the death of a party; or

(3) a judgment is arrested or reversed on appeal.

(b) If subsection (a) applies, a new action may be brought not later than the later of:

(1) three (3) years after the date of the determination under subsection (a); or

(2) the last date an action could have been commenced under the statute of limitations governing the original action;

and be considered a continuation of the original action commenced by the plaintiff.

"The Journey's Account Statute is designed to ensure that the diligent suitor retains the right to a hearing in court until he receives a judgment on the merits." *Vesolowski*, 520 N.E.2d at 434. The Journey's Account Statute is to be construed liberally to protect such diligent suitors. *See id.*

McGill claims that the Journey's Account Statute applies to her because: (1) she filed timely complaints in state and federal courts in November 1996; (2) those complaints were later dismissed for lack of jurisdiction; and (3) her new action, i.e., her proposed medical malpractice complaint against the Defendants, was filed within three years after her other complaints were dismissed. She further asserts that the trial court misinterpreted the Journey's Account Statute when it concluded that the statute does not apply to her proposed complaint because of negligence in the prosecution of the action. Specifically, she contends that "the negligence referred to in [the statute] is negligence with regard to the *first* or *original action*, which in this case is the federal and/or state court action." (Emphasis in

original). Because McGill timely filed those claims, she argues that the trial court erred when it relied on subsection (a)(1) of the statute to bar her claim. We agree with McGill on this point.

■ As our supreme court explained in *Cox v. American Aggregates Corp.*, 684 N.E.2d 193, 195 (Ind.1997):

The Journey's Account Statute applies by its terms to preserve only a "new action" that may be "a continuation of the first." Its typical use is to save an action filed in the wrong court by allowing the plaintiff enough time to refile the same claim in the correct forum. For example, the statute enables an action dismissed for lack of personal jurisdiction in one state to be refiled in another state despite the intervening running of the statute of limitations.

(Citations omitted). Further, the statute makes clear that it is the first action, not the "new action," which must fail for reasons other than those enumerated under subsection (a)(1) through (3) for the statute to apply. I.C. § 34–11–8–1.[3]

3. We have discovered what appears to be a mistake by our legislature in its drafting of the most recent version of the Journey's Account Statute. The former version of that statute, former Indiana Code Section 34–1–2–8, provided:

> If, after the commencement of an action, the plaintiff fails therein, from any cause except negligence in the prosecution, or the action abate, or be defeated by the death of a party, or judgment be arrested or reversed on appeal, a new action may be brought within five (5) years after such determination, and be deemed a continuation of the first, for the purposes herein contemplated.

Under that version, the words "any cause except negligence in the prosecution" was an independent phrase, such that our courts applied the statute when any of the following situations occurred: (1) the plaintiff fails from any cause except negligence in the prosecu-

tion; (2) the action abated; (3) the action is defeated by the death of a party; or (4) judgment is arrested or reversed on appeal. *Vesolowski*, 520 N.E.2d at 435. The current version of the statute, which was added in 1998, separates the phrase "any cause except negligence in the prosecution" as follows:

> (a) This section applies if a plaintiff commences an action and the plaintiff fails in the action from any cause *except:*
> (1) negligence in the prosecution of the action;
> (2) the action abates or is defeated by the death of a party; or
> (3) a judgment is arrested or reversed on appeal.

(Emphasis added). Thus, under the current statute, a cause which abates, for example, is not covered by the Journey's Account Statute. We are confident that this is a result the legislature did not intend and trust that, following publication of this opinion, the legislature will clarify the statute. Nevertheless, any

■ Here, the trial court concluded that the Journey's Account Statute does not save McGill's claim "since it failed due to negligence in the prosecution of the action." However, McGill's first actions, the federal and state class actions, were timely filed and did not fail because of negligence in the prosecution. Rather, those actions were dismissed for lack of subject matter jurisdiction. Because the trial court's ruling was based on McGill's "new action" instead of her original class actions, we must conclude that the court misapplied the Journey's Account Statute.

Notwithstanding this particular error, we are not limited to reviewing the trial court's reasons for granting summary judgment, and we will affirm a grant of summary judgment if it is sustainable on any theory or basis found in the record. *See Mayfield,* 690 N.E.2d at 740. And while the Defendants raise several arguments in response to McGill's contention that the Journey's Account Statute applies as a matter of law to save her proposed complaint, we find one of the Defendants' arguments dispositive, namely, that McGill's proposed complaint is not a continuation of a prior failed cause of action.

In *Torres v. Parkview Foods,* 468 N.E.2d 580, 582 (Ind.Ct.App.1984), this court determined that the Journey's Account Statute did not apply where a federal action had not yet "failed" when the plaintiffs' filed their "new action" in state court. Again, as the court in *Cox,* 684 N.E.2d at 195, stated, "The Journey's Account Statute applies by its terms to preserve only a 'new action' that may be 'a continuation of the first.'" Here, as the defendants point out, McGill's federal and state class actions claims had not yet failed when she filed her proposed complaint with the Department of Insurance. Stated differently, her federal and state class ac-

tion claims were still pending when she filed her proposed complaint. Therefore, McGill's proposed complaint was not a continuation of those failed claims under the Journey's Account Statute.

Still, McGill argues that this case is similar to *Torres,* where the plaintiffs filed their common law negligence complaint in federal court and then filed the same claim in state court before the federal action was dismissed for lack of diversity jurisdiction. In *Torres,* 468 N.E.2d at 583, although the Journey's Account Statute did not apply because the federal action had not yet failed when the Torreses filed their action in state court, we found it "impossible to believe that [the] state action should fail because it was brought *before* rather than after the original federal action, which was timely brought under the statute of limitations, failed." In addition, we found persuasive the following rationale of Judge Cardozo in *Gaines v. City of New York,* 215 N.Y. 533, 109 N.E. 594, 596 (1915):

> The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. *The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts.* When that has been done, a mistaken belief that the court has jurisdiction stands on the same plane as any other mistake of law.
>
> . \* \* \*
>
> There is nothing in the reason of the rule that calls for a distinction between the consequences of error in respect of the jurisdiction of the court and the

mistake in the drafting of the statute does not

affect the outcome here.

consequences of any other error in respect of a suitor's rights.

(Emphasis added). Thus, in *Torres* we held that, when in good faith a plaintiff brings an action in federal court within the statute of limitations, but that claim fails for lack of diversity jurisdiction, the statute of limitations is tolled with the filing of the suit for purposes of determining whether a subsequent state action involving the same parties and the same claims is brought within the statute of limitations. *Torres*, 468 N.E.2d at 583.

McGill correctly characterizes our opinion in *Torres* as applying the purpose behind the Journey's Account Statute to save a claim even where the facts did not fall squarely within the statute. McGill asks us to do the same in her case. But despite McGill's contentions, the holding in *Torres* does not apply here.

First, it was clear in *Torres* that the plaintiffs' state claim was, in every sense of the word, a "continuation" of their federal claim. Indeed, after the plaintiffs filed their negligence claim in federal court, the defendant filed a motion to dismiss for lack of diversity jurisdiction. While that motion was pending, the Torreses filed the same claim in state court. Under those circumstances, where a party merely files her claim in the wrong forum, we agree that the purpose of the Journey's Account Statute is served by allowing the state claim to go forward, even though it was filed before the federal action failed. In other words, consistent with the typical use of the Journey's Account Statute, which is to "save an action filed in the wrong court by allowing the plaintiff

enough time to refile the same claim in the correct forum," *Cox,* 684 N.E.2d at 195, we allowed the otherwise untimely state claim in *Torres* to go forward based on the timely filed federal claim.

Here, however, McGill's proposed medical malpractice complaint is not a continuation of her class action claims. While McGill's federal and state court class action complaints share similarities with her proposed complaint, those similarities are not sufficient to save her proposed complaint. McGill's federal and state court class actions sought recovery for alleged negligence, gross negligence and civil rights violations under 42 U.S.C. § 1983. McGill did not allege a claim for medical malpractice in those suits. Indeed, unlike the language contained in her proposed medical malpractice complaint, McGill's federal and state class action complaints make no mention of the requisite "standard of care" for medical providers in the community, nor does she allege that the Defendants' care and treatment of her husband fell below that standard of care. *See Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992) (stating plaintiff in medical malpractice action must allege, in part, that defendant failed to conform to requisite standard of care).[4]

In addition, under the Indiana Malpractice Act, McGill was required to file her proposed complaint for malpractice with the Department of Insurance *before* she could pursue litigation of her medical malpractice claims in *any court,* state or federal. *See* Ind.Code § 34–18–7–1(b). In *Hines v. Elkhart General Hosp.,* 603 F.2d

---

4. McGill directs us to the Hospital and Dr. Ling's designated facts, which includes a statement that the "claims set forth in the Federal Court Complaint are identical to the claims set forth in the Proposed Complaint." While that statement to the trial court may preclude the Hospital and Dr. Ling from asserting a contrary position on appeal, the determination of whether claims are identical is a legal question, not a factual question. Our review of McGill's complaints reveals that they were not identical because she did not raise a medical malpractice claim in her federal and state class action complaints.

646, 648 (7th Cir.1979), the Seventh Circuit Court of Appeals held that the Indiana Medical Malpractice Act's requirement that a plaintiff first submit her complaint to a medical review panel is binding on federal courts. Thus, even if McGill had intended to file medical malpractice claims along with her other federal and state class action claims, she was required first to file her proposed complaint with the Department of Insurance in a timely manner. She did not do that.[5]

Further, our supreme court has held that the Journey's Account Statute applies to medical malpractice actions. *Vesolowski*, 520 N.E.2d at 435. In that case, the court determined that the Journey's Account Statute applied to a medical malpractice claim which had been untimely filed in Indiana, where the victim of the alleged malpractice had timely filed a malpractice claim in Illinois. *Id.* But we cannot extend the holding in *Vesolowski* to the circumstances here. As we have stated, this is not a case where McGill filed an initial medical malpractice complaint in a timely manner in the wrong forum, and then later refiled that same complaint in the proper forum. Rather, she first filed class actions complaints, which did not raise medical malpractice claims, and only later filed her proposed complaint in the proper forum, the Department of Insurance. Because McGill did not file her proposed complaint within two years from the date the alleged malpractice occurred, her claim is barred. *See* I.C. § 34–18–7–1(b). We conclude that neither the Jour-

ney's Account Statute, nor the tolling rule recognized in *Torres*, applies to McGill's proposed complaint.

**Issue Two: Class Action Tolling Rule**

■ McGill also asserts that because there were class action complaints pending against the defendants when she filed her proposed complaint, the statute of limitations was tolled for claims of any current or potential class members. In support, she cites to *American Pipe & Const. Co v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). However, McGill did not present her argument on the class action tolling rule to the trial court at any point during the summary judgment proceedings. Rather, she has raised this argument for the first time on appeal. Generally, a party may not raise an issue on appeal that was not raised to the trial court, even in summary judgment proceedings. *United Farm Bureau Mut. Ins. Co. v. Lowe*, 583 N.E.2d 164, 168 (Ind.Ct.App.1991), *trans. denied.*

■ Still, McGill asserts that matters designated to the trial court at summary judgment contained facts underlying the class action tolling issue and, thus, her argument is not waived. We stated in *United Farm*, *id.*, that a party who raises a new issue for the first time on appeal does not necessarily waive that claim if the opposing party had unequivocal notice of the existence of the issue and an opportu-

---

**5.** McGill's attorney believed that the opening of Hugh's estate and appointment of McGill as the Personal Representative was a condition precedent to the filing of a proposed medical malpractice complaint with the Department of Insurance. Thus, instead of filing the proposed complaint along with the other federal and state class action complaints in November 1996, McGill waited to file her proposed complaint until February 1997, after she was appointed personal representative of Hugh's estate. In 1986, however, our supreme court held that under Indiana's Medical Malpractice Act, a patient's representative, which includes the patient's spouse, may file a medical malpractice claim for the death of a patient without first being appointed personal representative of the decedent's estate. *Community Hospital v. McKnight*, 493 N.E.2d 775, 777 (Ind.1986).

nity to defend against it. But that exception to the waiver rule does not apply here. Unlike in *United Farm, id.,* where the party who moved for summary judgment "substantially raised" its constitutional argument at summary judgment and later developed that claim on appeal, our review of the summary judgment record shows that McGill did not mention, or even reference, her class action tolling argument. Rather, as we have already stated, the arguments at summary judgment focused initially on the constitutional application of the two-year statute of limitations to McGill's claim, and then on application of the Journey's Account Statute. If we were to adopt McGill's assertion that a party does not waive a new argument raised for the first time on appeal simply because there are facts in the summary judgment record to support that argument, that would create an exception which swallows the waiver rule. Because McGill did not present her class action tolling argument to the trial court, and the Defendants did not have unequivocal notice of that claim, McGill has waived the issue for purposes of appeal.

## CONCLUSION

We conclude that the trial court misapplied the Journey's Account Statute when it based its ruling on "negligence in the prosecution" of McGill's medical malpractice complaint; that exception, if applicable, would apply to the original federal and state class actions. We nevertheless affirm the trial court's entry of summary judgment for the Defendants on the basis that here, as in *Torres,* the Journey's Account Statute does not save McGill's untimely proposed medical malpractice complaint because her federal and state class actions had not yet been dismissed when she filed her proposed complaint. However, the tolling rule recognized in *Torres* does not save her proposed medical mal-

practice complaint because that complaint is not a continuation of her original class action claims filed in federal and state courts. We hold, therefore, that McGill's medical malpractice claim is barred by the statute of limitations.

Affirmed.

ROBB, J., and MATHIAS, J., concur.