**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 15 2012, 8:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**GORDON B. DEMPSEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES FISKS AND MURPHY:

**LAWRENCE M. HANSEN**
**LINDA TURNER JELKS**
Hansen Law Firm, LLC
Noblesville, Indiana

ATTORNEY FOR APPELLEES CITY OF GREENFIELD ET AL.:

**CAREN L. POLLACK**
Pollack Law Firm, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE HANCOCK COUNTY BOARD OF HEALTH:

**MARK A. HOLLOWAY**
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE GREGG MORELOCK:

**MICHAEL E. BROWN**
Kightlinger & Gray, LLP
Indianapolis, Indiana

**CRYSTAL G. ROWE**
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

TED L. CECIL, CECIL SEPTIC LLC, and )
MAX HAAS COMPANY, LLC, )
)
Appellants-Plaintiffs, )
)
vs. ) No. 33A05-1112-MI-686
)
FISK EXCAVATING, PLUMBING AND )
SEPTIC SERVICES, INC., DENNIS FISK, )
DENNIS FISK, JR., MICHELLE FISK, BOB )
MURPHY, CITY OF GREENFIELD, DAVID )
SCHEITER, CHERYL RADTKA, HANCOCK )
COUNTY BOARD OF HEALTH, and GREGG )
MORELOCK, )
)
Appellees-Defendants. )

---

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Mary G. Willis, Judge
Cause Nos. 33C01-0905-MI-15, 33C01-0907-PL-14

---

**October 15, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Ted L. Cecil, Cecil Septic LLC, and Max Haas Company, LLC (collectively, "Cecil")

filed a complaint alleging defamation against Fisk Excavating, Plumbing and Septic Services,

Inc.; Dennis Fisk; Dennis Fisk, Jr.; Michelle Fisk; Bob Murphy (collectively, "Fisk"); the

City of Greenfield; David Scheiter; Cheryl Radtka (collectively, "the City"); and the Hancock

County Board of Health ("the Board"); and against Gregg Morelock ("Morelock") alleging

legal malpractice. Cecil now appeals the trial court's order granting summary judgment in

favor of the defendants, raising the following consolidated and restated issues:

2

I.      Whether the trial court properly granted summary judgment in favor of Fisk, finding that some of the alleged defamatory statements related only to a consumer opinion regarding a product and not to Cecil, that the remaining allegations of defamation were not timely pursuant to the applicable statute of limitations, and that the other allegations in the complaint did not concern Fisk and were not recognizable torts;

II.     Whether the trial court properly granted summary judgment in favor of the City, finding that the allegations of defamation were not timely pursuant to the applicable statute of limitations, that the elements of defamation were not established, and that the remaining allegations in the complaint did not relate to the City and were not recognizable torts;

III.    Whether the trial court properly granted summary judgment in favor of the Board, finding that the allegations of defamation were not timely pursuant to the applicable statute of limitations and because Cecil filed an untimely tort claim notice; and

IV.     Whether the trial court properly granted summary judgment in favor of Morelock, finding that Cecil's allegations of legal malpractice were not timely filed pursuant to the applicable statute of limitations.

We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

Ted L. Cecil ("Ted") is the sole shareholder and owner of Cecil Septic LLC ("Cecil Septic") and Max Haas Company, LLC ("Max Haas"), which are both businesses located in Hancock County, Indiana and provide septic and sewer services. Ted has owned Cecil Septic, which was previously owned and operated by his father, since 1987 or 1988, and in March 2007, Ted bought Max Haas. As part of Cecil's business, Ted employed a system called Terra-Lift, which is used for septic repair and renewal of septic systems. Terra-Lift utilizes a pneumatic probe to inject air at high pressure into and across the septic field,

3

creating fissures in the soil, and to insert tiny beads into these fissures to keep soil from filling in the fissures over time.

Fisk Excavating, Plumbing and Septic Services, Inc. ("Fisk Septic") is in the business of repairing and replacing septic systems, but does not employ Terra-Lift. Fisk Septic had its principal place of business in Hancock County, Indiana and is a competitor of Cecil. Dennis Fisk, Dennis Fisk, Jr. ("Fisk Jr."), and Michelle Fisk are principals or employees of Fisk Septic, and Bob Murphy ("Murphy") is a former employee of Fisk Septic.

Cecil alleged that, sometime in 2002, a man named Tom O'Neill ("O'Neill") asked Fisk about Terra-Lift, and Fisk responded that, Terra-Lift results are just temporary, maybe for six months or a year, and you may want to try it if you are moving. *Appellant's App*. at 707. Cecil further alleged that, on March 5, 2005, Murphy told a homeowner, Ed Turner ("Turner"), when present at Turner's house to do work, that Cecil "draws short" when cleaning septic tanks. *Id*. at 53. To "draw short" means that the septic tank is not fully emptied when it is pumped out, leaving solids in the tank. *Id*. at 401. On November 14, 2008, Fisk Jr. was approached by Chris Hurley ("Hurley"), a private investigator hired by Ted to make inquiries of Fisk and to record the conversations. *Id*. at 113. Cecil alleged that Fisk Jr. made the following statements to Hurley when asked about Terra-Lift: (1) "Terra-Lift is mainly a way to 'get the foot in the door,' to sell a septic system"; (2) "It 'does not work, most of the time'"; (3) "A company will offer to apply the Terra-Lift price to a new septic system if Terra-Lift fails, but then charge 'always way higher' than normal, for the septic"; (4) "The state [board] of health will not recommend it, 'I guarantee you.'"; (5) "You

4

are 'throwing your money away' doing it."; (6) "They 'don't ever work' and 'it rarely works." *Id.* at 53-54.

The Greenfield Wastewater Treatment Plant ("the Plant") accepts septic waste for disposal only from within Hancock County. A waste hauler's load might include waste from one residential customer or from multiple customers. Generally, the haulers prefer to dump a full or almost full truck to save costs. Under the current policy, when a hauler brings waste to the Plant, he logs the customer's information and the amount of waste from each load. An employee from the Plant checks the site tube on the truck to determine the number of gallons of waste being dumped. Cecil pumps both septic tanks and grease from restaurants and has five or six trucks that pump and haul septic waste.

Until 2001, the City utilized an honor system at the Plant where the waste haulers were trusted to record the true amount of waste in their trucks, but the actual amount in the trucks was not checked. During one of Cecil's visits to the Plant in April 2001, in the presence of Ted's brother and several employees of the Plant, Superintendent David Scheiter ("Scheiter") spoke with Ted and told him that it had come to Scheiter's attention that Cecil employees were not accurately logging their loads when dumping at the Plant. Scheiter had been previously told by an employee of the Plant that, on multiple occasions, Cecil had logged only 1,000 gallons, even though the trucks held more than 4,000 gallons of waste. *Id.* at 176, 501. Shortly thereafter in 2001, Scheiter changed the Plant's procedure for checking haulers' loads to require all trucks to be checked for the amount of waste on board before the driver is allowed to dump the waste. Later that year, the Indiana Department of

5

Environmental Management changed the policy and procedure for all waste plants to require pH sampling and sample storage. Ted admitted in his deposition testimony that he regularly under-reported his loads at the Plant prior to 2001, during the time when the honor system was in place. *Id*. at 131. He stated that everybody, including Cecil, would under-report when the honor system was used. *Id*.

Stephen Schmidt ("Schmidt") was hired by the Board as an environmental health specialist. He inspected new home construction and septic systems that replaced old systems to make sure they were designed and constructed properly. Cecil asserted that, when inspecting a job that Cecil had performed, Schmidt told a subcontractor of Cecil that the work looked better than other systems Cecil had installed. *Id*. at 35-36. Cecil alleged that Schmidt told another homeowner, Gus Clark ("Clark"), that Cecil "ripped off" homeowners. *Id*. at 36. On October 9, 2007, Cecil had used the Terra-Lift system to restore Clark's septic system; however, it did not work, and Clark continued to experience problems. On January16, 2008, Cecil pumped out Clark's septic tank, but left sewage in the tank. Clark's wife complained to the Board, and Schmidt inspected the tank. Cecil alleged that Schmidt told Ted's mother that there were numerous complaints about Cecil and gave her a business card of a competitor. *Id*.

Brent Wakeland ("Wakeland") is an environmental health specialist for the Board and part of his job duties is also to inspect new and restored septic systems to ensure they are constructed properly. Wakeland is familiar with the types of soil in Hancock County because he has to evaluate the soil to make sure that a building site is suitable for a septic system,

6

allowing for proper drainage of water and not containing a high water table. *Id.* at 355. Sometime between 2000 and 2005, the Board checked with the Indiana Department of Health to inquire as to whether the State was going to regulate the use of Terra-Lift, but the State has not yet regulated its use. Over the last ten years, several residents whose septic installations Wakeland inspected told him that they had a Terra-Lift restoration, but had ended up needing to replace the septic system anyway. *Id.* at 356. Wakeland estimated that, during that same period of time, about fifty residents told him that Terra-Lift did not work very well, and typically after two years, the septic system failed again. *Id.* at 357.

After Schmidt inspected the Clarks' septic tank, Wakeland sent a letter on January 31, 2008, informing Cecil that, when pumping out septic tanks, he should pump out or remove all of the solids. *Id.* at 357, 361. Wakeland sent the letter to Ted and copied the Board's Health Officer, Ray A. Haas, M.D., and the Board's attorney, Morelock, but did not send the letter to anyone else. On November 14, 2008, Wakeland had a conversation with Hurley at the Board's offices, and Hurley secretly recorded their conversation. Wakeland did not know that she was Cecil's private investigator. In this conversation, Wakeland offered his opinions regarding Terra-Lift, particularly that it did not work well in Hancock County due to the heavy clay soil and high water table.

Kyle Schrink ("Schrink") was also an environmental health specialist at the Board, but he left that position in 2005 to pursue other employment. Cecil alleged that an unidentified girl heard Schrink tell Ted's mother that "I don't like him. I don't recommend him,"

referring to Cecil. *Id*. at 38. Ted was not sure when this conversation occurred, but it may have been in 2002, 2003, or 2004.

Cecil alleged that a secretary at the Board, Karen Lindsay ("Lindsay") had told a Greenfield nurse, Julie Hanson ("Hanson"), that Cecil "rips people off" and "she should go to another vendor, whom she named." *Id*. at 35. Ted believed that this conversation took place in 2005 within a few weeks of when Cecil installed a septic pump for Hanson. Cecil also alleged that Lindsay had slandered Cecil on several occasions, with the most recent being on October 27, 2008, when she rolled her eyes and told the boyfriend of Ted's daughter that Terra-Lift did not work in Hancock County, due to the soil. *Id*. at 38, 276. Ted had sent his daughter and her boyfriend to the Board to ask about Terra-Lift. Cecil further alleged that, in May 2007, a document was sent to the Clarks, which was shown to one of Cecil's investigators. On the letter, someone had handwritten "Blast system was a waste"; however, Cecil did not know who had written this. *Id*. at 287, 288.

In 2003, Ted, on behalf of Cecil, hired Morelock to help resolve a contractual dispute Cecil was having with Mark's RV. Mark's RV had contracted with Cecil to install a septic system and some temporary holding tanks to store wastewater until the septic system could be installed. Cecil believed that the holding tanks would only hold restroom wastewater, but later suspected that they contained more than just restroom waste. When they emptied them the second time, the liquid was allegedly bluish-green, which to Cecil indicated the presence of formaldehyde. Since dumping formaldehyde into the Plant required a special discharge permit, Cecil asked Mark's RV to complete an application for such a permit, but they

8

refused. Cecil therefore contacted Morelock to retain him to help in getting the permit application completed. After a two-week period of time where Cecil contends that Morelock did not return its calls, a telephone conversation took place, where Morelock told Cecil that the attorney did not appreciate being lied to and that Mark's RV stated that there was "nothing but water running off that parking lot there." *Id*. at 384. Cecil took these statements to mean that Morelock was taking the word of Mark's RV over Cecil's. Cecil therefore believed that Morelock had a conflict of interest and was representing the interests of the Board, whom he had as a client, and "the permit entanglements that this formaldehyde got them all into" rather than those of Cecil. *Id*. at 385. Cecil discharged Morelock, and the unused portion of their retainer was returned. Cecil perceived the conflict of interest in 2003 when he fired Morelock.

On December 23, 2008, Cecil filed a tort claims notice against the Hancock County Board of Commissioners, and on December 29, 2008, filed a petition for injunction against the Board, which was originally filed in Marion County, but was later transferred to Hancock County and ultimately to Henry County. Cecil subsequently amended its injunction petition to add a claim for damages on September 2, 2009. On January 22, 2009, Cecil filed a complaint in Marion County against Fisk, the City, and Morelock, which included five counts: Count I, "Defamation"; Count II, "Dump Fee Overcharges"; Count III, "Permit Entanglements"; Count IV, "Abuse of Authority"; and Count V, "As to Venue." *Id*. at 34-46. Venue was transferred to Henry County on July 22, 2009. These two separate actions were consolidated for discovery by informal agreement of the parties. On July 29, 2009, six

months after filing its complaint, Cecil served a tort claim notice on the City. All of the defendants filed motions for summary judgment. Cecil requested an extension of time to respond to the motions, which was granted, and the trial court set the deadline for Cecil's responses as August 22, 2011. Cecil's response to the City's motion for summary judgment was filed on August 23, 2011. The response to the Morelock's motion for summary judgment was filed on September 13, 2011, and the response to the Board's motion was filed on September 16, 2011. Fisk filed an amended motion for summary judgment on September 2, 2011, which Cecil responded to on October 19, 2011. The trial court conducted a hearing on the defendants' motions for summary judgment on September 16, 2011. On September 19, 2011, the trial court issued an order granting summary judgment in favor of the City, the Board, and Morelock; on December 6, 2011, the trial court issued its order granting summary judgment in favor of Fisk. Cecil now appeals.

## DISCUSSION AND DECISION

On appeal from a grant of summary judgment, our standard of review is the same as that of the trial court. *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.,* 832 N.E.2d 559, 562 (Ind. Ct. App. 2005). We stand in the shoes of the trial court and apply a *de novo* standard of review. *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 695 (Ind. Ct. App. 2006). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.,* 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law. Ind. Trial Rule 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *Wilcox Mfg.*, 832 N.E.2d at 562. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied.*

The defense of a statute of limitations is peculiarly suitable as a basis for summary judgment. *McGill v. Ling*, 801 N.E.2d 678, 682 (Ind. Ct. App. 2004), *trans. denied*. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Id.* The burden is on the moving party to show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Cox*, 848 N.E.2d at 695-96. Nevertheless, the reviewing court faces the same issues that were before the trial court and must carefully scrutinize the trial court's determination to assure that the non-prevailing party was not improperly prevented from having his or her day in court. *Id.*

An action for injury to person or character must be commenced within two years after the cause of action accrues. Ind. Code § 34-11-2-4. Defamation is that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff. *Davidson v. Perron*, 716 N.E.2d

11

29, 37 (Ind. Ct. App. 1999), *trans. denied*. Therefore, the statute of limitations for defamation is two years. To establish defamation, the plaintiff must prove the following elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *Id*.

## I. Fisk[1]

Cecil argues that the trial court erred when it granted summary judgment in favor of Fisk as to all claims against them. Cecil contends that its claims of defamation against Fisk were not time-barred by the applicable statute of limitations. It claims that the statements attributed to Fisk made on November 14, 2008 to Hurley were within the statute of limitations and that the discovery rule should apply to toll the statute of limitation as to the statement made to O'Neill because it was not discovered until September 29, 2011. Cecil also alleges that the statute of limitations should have been tolled due to the ongoing nature of the alleged tort. Cecil further asserts that, the fact that the statements on November 14, 2008 only pertained to Terra-Lift and not him personally, should not matter because he was the only Terra-Lift provider in the county and their defamatory inference was clear.

Here, because all of the claims against Fisk pertain to defamation, Cecil was required to file a complaint within two years of the alleged injury. I.C. 34-11-2-4. Cecil's complaint was filed on January 22, 2009. The statement by Murphy regarding the fact that Cecil

---

[1] Fisk filed a motion to strike several statements contained within Cecil's brief, contending that these statements had been previously stricken from the record by the trial court and were therefore not properly before this court. "Once evidence is stricken from the record, it may not be used to further support a party's legal argument." *AKJ Indus., Inc. v. Mercantile Nat'l Bank*, 779 N.E.2d 543, 545 (Ind. Ct. App. 2002), *trans. denied*. Pursuant to a separate order, we grant Fisk's motion to strike.

"draws short" was made on March 5, 2005. Cecil does not make any argument that the statute of limitations should be tolled for this statement. Therefore, Cecil's cause of action accrued on March 5, 2005, and the complaint was not filed within the applicable time period, causing it to be untimely.

As for the remaining statements attributed to Fisk, including the 2002 statement to O'Neill and the November 14, 2008 statements to Hurley, we do not find that these statements were actionable. Defamation is that which tends to injure reputation or to diminish esteem, respect, goodwill or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff. *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 522 (Ind. Ct. App. 2001), *trans. denied*. To maintain an action for defamation, a plaintiff must show a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994). "Defamatory words are not actionable unless they refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Id.* (citing *Lee v. Weston*, 402 N.E.2d 23, 30 (Ind. Ct. App. 1980)). None of the remaining alleged statements by Fisk refer to Ted, Cecil Septic, Max Haas, or any other ascertainable person, and Cecil does not dispute that the statements refer only to a product, Terra-Lift. Cecil therefore has failed to establish a claim for defamation as to the 2002 statement and the November 14, 2008 statements under Count I of his complaint. Further, to the extent that Cecil argues that the remaining counts apply to Fisk, we disagree as those counts do not relate to alleged acts by Fisk and they are not recognizable torts. The trial court properly granted summary judgment in favor of Fisk.

13

## II.  The City

Cecil argues that the trial court erred when it granted summary judgment in favor of the City as to all of the claims against it.  Specifically, Cecil contends that the claims against the City were not untimely due to the continuing nature of the defamation by the City.  Cecil further alleges that the defense of truth does not apply to the defamation claims because Scheiter singled out Cecil as being "*the* bad hombre" in the underreporting that occurred at the Plant when there were others that participated in the same behavior.  *Appellant's Br*. at 42-43 (emphasis in original).  Further, Cecil asserts that the remaining counts were recognizable torts that implicated the City, and summary judgment should not have been granted as to them.

As to the timeliness of Cecil's defamation claim against the City, the trial court determined that Cecil's complaint, filed on January 22, 2009, was untimely.  The only allegation of defamation against the City was the statement by Scheiter, which was made in the presence of Ted, Ted's brother, and several employees of the Plant, that it had come to Scheiter's attention that Cecil employees were not accurately logging their loads when dumping at the Plant.  This statement was made in April 2001, which was almost eight years before the complaint was filed.  Ted was physically present when the statement was allegedly made by Scheiter and was aware of the alleged defamation as of the date of the statement.  Cecil's defamation claim was therefore untimely because it was required to be commenced within two years after the cause of action accrued; Cecil's claim was filed over seven years after the cause of action accrued.

14

Further, even assuming without deciding that the statement attributed to the City was defamatory, the statement was true. To impose liability for defamation, a false statement of fact is required. *Newman v. Jewish Cmty. Ctr. Ass'n of Indianapolis*, 875 N.E.2d 729, 739 (Ind. Ct. App. 2007), *trans. denied*. Truth is a complete defense to defamation. *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 924 (Ind. Ct. App. 2002) (citing *Assocs. Corp. of N. Am. v. Smithley*, 621 N.E.2d 1116, 1119 (Ind. Ct. App. 1993)). Here, Cecil admitted that the substance of the allegedly defamatory statement was true. The context of the communication by Scheiter was that an employee of the Plant had discovered that, on multiple occasions, Cecil had logged only 1,000 gallons to be dumped, even though the trucks held more than 4,000 gallons of waste. *Id*. at 176, 501. Ted admitted under oath at his deposition that, under the prior honor system, Cecil habitually underreported the loads the company dumped at the Plant for many years. *Appellant's App*. at 131. Therefore, Scheiter's statement was true and not a false statement of fact. The trial court did not err when it entered summary judgment in favor of the City as to the defamation count. Additionally, the trial court properly granted summary judgment as to the remaining counts as they either did not concern the City or did not constitute recognizable torts.

### III. The Board

Cecil argues that the trial court erred when it granted summary judgment in favor of the Board as to all of the claims against it. Cecil alleges that its claims against the Board were timely both under the statute of limitations and the Tort Claims Act. Cecil further contends that all of the statements attributed to the Board constituted defamation, and

15

genuine issues of material fact exist as to each element.

When a claim is filed against a political subdivision, the Indiana Tort Claims Act ("ITCA") requires written notice to be served upon the governing body of that political subdivision within 180 days after the loss occurs. Ind. Code § 34-13-3-8. The ITCA provides that a claim against a political subdivision is barred unless the prescribed notice is filed within the statutory time limit. *Davidson*, 716 N.E.2d at 33. Further, a two-year statute of limitations applies to Cecil's defamation claims against the Board. I.C. 34-11-2-4.

Here, Cecil filed his tort claims notice against the Hancock County Board of Commissioners on December 23, 2008 and filed its complaint against the Board on September 2, 2009. In the complaint, Cecil claimed that Lindsay, a secretary at the Board, told Hanson that Cecil "rips people off" and that this conversation occurred in 2005. *Appellant's App*. at 35. Cecil was required to file a tort claims notice within 180 days of the alleged defamatory statement and to file his complaint within two years of such occurrence. Neither of these was done in a timely fashion.

Cecil alleged that Schmidt told a subcontractor of Cecil's that a job done by Cecil looked better than other Cecil jobs, a conversation that occurred in 2003 or 2004. This alleged defamation occurred at least four years prior to Cecil's tort claim notice and is time-barred. Cecil also alleged that Schmidt told Clark that Cecil "ripped off" homeowners, *appellant's app*. at 36, a statement made on January 16, 2008, which is more than 180 days before the tort claims notice was filed. Therefore, this alleged statement is time-barred. Sometime between January 16, 2008 and March 24, 2008, Cecil alleged that Schmidt told

16

Cecil's mother that there were numerous complaints about Cecil and gave her the business card of a competitor. This alleged defamation is time-barred because it occurred more than 180 days before the tort claims notice was filed.

The January 31, 2008 letter, which Wakeland sent to Cecil informing Cecil to make sure he removes all of the solids out of tanks when pumping them, was also alleged to be defamatory. This alleged statement was also untimely as it was more than 180 days before the tort claims notice was filed. Cecil alleged that, in May 2007, a document that contained a handwritten notation stating, "Blast system was a waste," was sent to the Clarks by the Board and shown to one of Cecil's investigators. *Appellant's App.* at 287-88. In the record before us, there is no evidence as to who had written this notation, but even if it could be proven that someone at the Board had written it, the alleged defamation still took place more than 180 days before the tort claims notice was filed and more than two years before the complaint was filed. Cecil made an allegation that an unidentified girl heard Schrink tell Cecil's mother, "I don't like him. I don't recommend him," referring to Cecil. Ted was unsure when this statement was made, but it may have been in 2002, 2003, or 2004, and the evidence showed that Schrink left his position at the Board in 2005. Therefore, this allegation was time-barred by both the ITCA and the statute of limitations.

Only two of Cecil's allegations were not time-barred by either the ITCA or the statute of limitations. In one, Cecil alleged that his investigator, Hurley, had a conversation with Wakeland at the Board's offices on November 14, 2008, where Wakeland made numerous statements regarding his opinions about Terra-Lift, particularly that it did not work in

Hancock County because of the heavy clay soil and the high water table. The other incident was when Lindsay, while speaking to Cecil's daughter and her boyfriend on October 27, 2008, allegedly rolled her eyes and said that Terra-Lift did not work very well in Hancock County due to the soil. "Defamatory words are not actionable unless they refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Schrader*, 639 N.E.2d at 261 (citing *Lee*, 402 N.E.2d at 30). Neither of these two remaining alleged statements by the Board refers to Ted, Cecil Septic, Max Haas, or any other ascertainable person, and Cecil does not dispute that the statements refer only to a product, Terra-Lift. Cecil therefore has failed to establish a claim for defamation as to the October 27, 2008 statement and the November 14, 2008 statements under Count I of his complaint. We conclude that the trial court properly granted summary judgment in favor of the Board.

## IV. Morelock

Cecil argues that the trial court erred when it granted summary judgment in favor of Morelock as to all of the claims against him. Cecil asserts that his claims against Morelock were not time-barred because the statute of limitation should have been tolled due to Morelock's concealment of the existence of the cause of action, Morelock's conflict of interest. Cecil contends that, because there was a fiduciary relationship between itself and Morelock, a mere failure to disclose this conflict of interest when there was a duty to do so was sufficient to toll the statute of limitations.

In Indiana, the statute of limitations for a claim of legal malpractice (or negligence) is two years. Ind. Code § 34-11-2-4; *see also Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008)

18

(stating that statute of limitations for negligence action is two years); *Biomet, Inc. v. Barnes & Thornburg*, 791 N.E.2d 760, 765 (Ind. Ct. App. 2003) (recognizing that statute of limitations for legal malpractice is two years), *trans. denied*. Further, legal malpractice actions are subject to the discovery rule, which provides that the statute of limitations does not begin to run until such time as the plaintiff knows, or in the exercise of ordinary diligence could have discovered, that he had sustained an injury as the result of the tortious act of another. *Biomet,* 791 N.E.2d at 765. For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). Therefore, under the statute of limitations, Cecil had two years from the date of discovery to bring its legal malpractice (or negligence) cause of action.

The designated evidence showed that Morelock represented Cecil for a brief period of time, only a few weeks, in 2003. Although the representation ended in 2003, Cecil did not file a complaint against Morelock until January 22, 2009. Thus, the applicable two-year statute of limitations bars Cecil's claims against Morelock because the suit was not timely filed. Nevertheless, Cecil contends that the statute of limitation should have been tolled by the discovery rule and the doctrine of fraudulent concealment. The designated evidence revealed that Cecil perceived the existence of the alleged conflict of interest in 2003 when Morelock believed Mark's RV over Cecil regarding the presence of formaldehyde at the Mark's RV premises. *Appellant's App*. at 386. Cecil therefore knew or should have known of any alleged injury in 2003, even if the full extent of the injury was not yet evident. As to

19

Cecil's claims of fraudulent concealment, "where the duty to inform exists by reason of a confidential relationship, when that relationship is terminated the duty to inform is also terminated; concealment then ceases to exist." *Adams v. Luros*, 406 N.E.2d 1199, 1202 (Ind. Ct. App. 1980). Here, the evidence showed that Cecil perceived a conflict of interest in 2003 and fired Morelock at that time. Thus, any fraudulent concealment by failure to disclose ended when the confidential attorney-client relationship ended. As a result, any claim against Morelock should have been filed within two years of 2003. Because Cecil's claims were not filed until January 22, 2009, any claims against Morelock were barred by the applicable statute of limitation. The trial court did not err when it granted summary judgment in favor of Morelock.

On appeal, Morelock argues that he is entitled to recover appellate attorney fees from Cecil pursuant to Indiana Appellate Rule 66(E). He contends that the arguments raised by Cecil are "devoid of any merit and are frivolous in nature." *Appellee Morelock's Br*. at 26. Morelock claims that Cecil's brief is filled with baseless theories, speculative statements, and inaccurate arguments not grounded in the designated evidence. Under these circumstances, he asserts that he is entitled to an award of appellate attorney fees. We agree.

In pertinent part, Indiana Appellate Rule 66(E) provides that a court on review "may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." "[O]ur Supreme Court [has] cautioned that the determination to allow appellate attorney's fees should be tempered so as not to discourage innovation or periodic reevaluation of controlling precedent. *Potter v. Houston*, 847 N.E.2d

241, 249 (Ind. Ct. App. 2006) (citing *Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind. 1987)). The discretion to award attorney fees under Appellate Rule 66(E) is limited to instances "'when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.'" *Id.* (quoting *Orr*, 512 N.E.2d at 152).

Here, Cecil's briefs are practically devoid of articulate arguments and instead contain incomplete sentences, disjointed arguments, and unsupported accusations of collusion by Morelock with the Board. In light of Cecil's failure to present cogent arguments and to support its contentions throughout the briefs, we hold that appellate attorney fees are appropriate in this case. *See e.g., Srivastava v. Indianapolis Hebrew Congregation, Inc.*, 779 N.E.2d 52, 61 (Ind. Ct. App. 2002) (awarding appellate attorney fees where the appellant's briefs were practically devoid of articulate arguments and were filled with unsupported accusations of conspiracies of trial court, appellee's counsel, and variety of political figures in effort to derail lawsuit), *trans. denied*. Therefore, we remand to the trial court for a determination of Morelock's appellate attorney fees.

Affirmed and remanded.

NAJAM, J., and MAY, J., concur.